UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALFIO PENNISI, as co-trustees of the Salvatore A. Pennisi Trust and JOHN PENNISI, as co-trustees of the Salvatore A. Pennisi Trust,

    Plaintiffs,

v.    Case No: 2:18-cv-239-FtM-99MRM

JOHANNA REED, individually, JOSEPH REED, individually, JOSEPH R. REED, DMD LLC, a New Jersey limited liability company, and J. REED HOLDINGS, LLC, a New Jersey limited liability company,

    Defendants.

## **OPINION AND ORDER**

This matter comes before the Court on defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #9) filed on April 19, 2018. Plaintiffs filed a Response in Opposition (Doc. #18) on May 11, 2018. Defendants filed a Reply (Doc. #24) on May 24, 2018. The Certifications and Affidavits of Johanna and Joseph Reed (Docs. ##10, 11, 25) and Alfio K. Pennisi (Doc. #17) are offered in support of and in opposition to the Motion to Dismiss. For the reasons set forth below, the Motion is granted.

**I.**

This case arises out of defendants' failure to repay alleged oral loan agreements and a promissory note. The issue raised here is whether Florida's long-arm statute empowers the Court to exercise *in personam* jurisdiction over the non-resident defendants.

On March 13, 2018, New Jersey citizens Alfio and John Pennisi, as co-trustees of the Salvatore A. Pennisi Trust (the "Trust"), filed a five-count Complaint in state court (Doc. #2) against Johanna and Joseph Reed, who are Texas citizens[1], and their companies – Joseph R. Reed DMD LLC and J. Reed Holdings LLC, who are New Jersey citizens. The LLC defendants are owned by Johanna and Joseph Reed. Defendants removed the case based on diversity jurisdiction. (Doc. #1.)

Johanna Reed is the daughter of the late Salvatore A. and Carole Pennisi, and a beneficiary of the Trust. Defendant Joseph Reed is Johanna's husband and a dentist. The first four counts are for money lent, and the fifth count is for breach of contract against Johanna and Joseph Reed. The Complaint attaches a number of checks drawn on the Trust's bank account from 2000 to 2009 that plaintiffs allege reflect loans made to defendants. The Complaint also attached a Note dated January 1, 2003, in the amount of

---

[1] Johanna and Joseph moved to Texas in August 2013, having previously lived in New Jersey. (Doc. #10, ¶ 3.)

$324,662, with the Trust as Lender, and Johanna and Joseph Reed as guarantors. The Note states that the "place of payment" is Mt. Laurel, New Jersey "or at such other place as Lender, from time to time, may designate." (Doc. #1-1, Ex. J.) Mt. Laurel, New Jersey is also listed at the top of the note, above the date. (Id.)

In a letter dated October 16, 2015, the Trust (via its Florida counsel) demanded payment from Johanna and Joseph Reed of debts totaling $795,274.80. (Doc. #1-1.) Another letter was sent to Johanna and Joseph on January 5, 2018, by the Trust's Florida counsel, requesting that the Reeds acknowledge that a debt is owed to the Trust in the amount of $599,243.87. (Id.) No demand for payment has been made on the LLC defendants. Defendants have refused to pay, denying that any money is owed or any breach, believing that the money given to them by Salvatore Pennisi was a gift and that any loan has been repaid.

Defendants removed the case to this Court based on diversity jurisdiction on April 12, 2018 (Doc. #2), and soon thereafter moved to dismiss for lack of personal jurisdiction and improper venue, filing affidavits disputing the contention that the Court has specific jurisdiction over defendants pursuant to Florida's long-arm statute. With respect to personal jurisdiction, the Complaint avers that defendants entered into a promise to repay in Florida, failed to repay funds owed to a Florida creditor, and the cause of action accrued in Florida. (Id., ¶ 18.) In their Response,

plaintiffs state that the Court has specific personal jurisdiction because the loans were made from a Florida trust and must be repaid within the state.  Plaintiffs make these allegations generally and do not cite the specific provision of the long-arm statute on which they rely, but the closest provision that matches plaintiffs' allegations is Fla. Stat. § 48.193(1)(a)(7).  Alternatively, defendants request that the case be dismissed for improper venue or transferred to the Northern District of Texas.  Plaintiffs oppose both aspects of the Motion.

**II.**

The jurisdictional basics are well established.  To hear a case, a federal court must have jurisdiction over both the subject matter of the action and the parties to the action.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584, (1999).  Absent either, "the court is powerless to proceed to an adjudication."  Id.

A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant if: (1) personal jurisdiction is authorized under the forum state's long-arm statute and (2) the exercise of such jurisdiction comports with constitutional due process.  Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203 (11th Cir. 2015); Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).  The exercise of personal jurisdiction comports with due process if the non-resident defendant has established "certain minimum contacts with the forum

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, (1984) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). A prima facie case is established if the plaintiff alleges enough facts to withstand a motion for directed verdict.[2] SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997) (citation omitted). "First, the plaintiff must allege sufficient facts in [its] complaint to initially support long arm jurisdiction

---

[2] On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover's case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. Miles v. Tenn. River Pulp and Paper Co., 862 F.2d 1525, 1528 (11th Cir. 1989) (citing Kaye v. Pawnee Constr. Co., 680 F.2d 1360, 1364 (11th Cir. 1982)).

before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute." Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (citation omitted). If the defendant sustains its burden by raising "a meritorious challenge to personal jurisdiction" "through affidavits, documents[,] or testimony," the burden shifts back to the plaintiff. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996). Plaintiff is then required to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." Future Tech. Today, Inc., 218 F.3d at 1247 (citation omitted). If in conflict, "the district court must construe all reasonable inferences in favor of the plaintiff." Thomas v. Brown, 504 F. App'x at 847 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).

*Florida's Long-Arm Statute*

For purposes of the Motion, although not specifically cited to, plaintiffs generally assert that the Court has specific jurisdiction over defendants under the following portions of Florida's long-arm statute, which relate to specific jurisdiction[3]:

> **(1)(a)** A person, whether or not a citizen or resident of this state, who personally or through an agent does any

---

[3] General jurisdiction does not apply here as there is no basis to conclude that defendants "engaged in substantial and not isolated activity" in Florida, as required by Fla. Stat. § 48.193(2).

of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

. . .

**(7)** Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.[4]

"[I]ndividuals submit themselves to the jurisdiction of Florida for any cause of action arising from a breach of contract for failure to perform acts *required by the contract* to be performed in this state." Olson v. Robbie, 141 So. 3d 636, 639 (Fla. 4th DCA 2014) (quoting Fla. Stat. § 48.193(1)(a)(7) (emphasis added)). However, for the exercise of jurisdiction over a nonresident or foreign corporation to be appropriate under subsection (1)(a)(7), "there must exist a duty to perform an act in Florida; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." Posner v. Essex Ins. Co., 178 F.3d 1209, 1218 (11th Cir. 1999). As with the other provisions of the long-arm statute, "[t]his provision must be strictly construed in order to guarantee compliance with due process requirements." Olson, 141 So. 3d at 640.

---

[4] Defendants cite to Fla. Stat. § 48.193(1)(g) as the relevant provision, but the statute was amended in 2016. The now-relevant provision is (1)(a)(7).

**(1) Certifications of Johanna and Joseph Reed (Docs. #10, 11, 25)**

Defendants submit the Certifications of Johanna and Joseph Reed (Docs. #10, 11, 25). Johanna was raised in New Jersey by her parents, Salvatore A. and Carole Pennsi, and her parents resided in New Jersey until approximately the mid-1990s. (Doc. #10, ¶ 9.) After that date, Salvatore and Carole maintained their primary residence in Fort Myers, Florida, while also maintaining a residence in New Jersey until June, 2013. (Id., ¶ 10.)

In 1996, Salvatore executed a revocable trust agreement, and transferred his assets into the Salvatore A. Pennisi Trust (the "Trust"). Initially he was the sole trustee, and treated trust assets in the same way he maintained his own personal records. He did not deal with Johanna any differently, either before or after the Trust was created, in terms of both monetary gifts, loans, and all other financial transactions. He was generous with his money, making a number of loans and gifts to Johanna. (Id., ¶ 10.)

In 2004, co-trustee Robert Keyser (Carole's son from a previous marriage), drafted a promissory note for Johanna's signature for her husband's dental practice. The note was made in New Jersey and required payment at her parent's address in New Jersey. It has since been paid in full. (Doc. #10, ¶ 13.) Johanna also appended a copy of a mortgage note, showing a loan made by the Trust to Alfio and Paula Pennisi on November 6, 2000,

in New Jersey, and payable at Salvatore's address in Mt. Laurel, New Jersey. (Doc. #25, ¶ 5.)

In or about 2007, Salvatore was replaced as trustee by three co-trustees: his wife Carole, Robert Keyser (Carole's son from a previous marriage), and Alfio Pennisi (Salvatore's son from a previous marriage). (Doc. #10, ¶ 11.) In 2011, Salvatore and Carole were both declared incompetent, and a guardian was appointed to handle their affairs in 2012. (Id., ¶ 12.) Salvatore passed away in 2016, and Carole passed away in 2018.

Although Johanna and Joseph occasionally visited Salvatore and Carole in Florida during their later lives, they never travelled to Florida to undertake any loans or otherwise conduct any business with her father or his Trust. (Doc. #10, ¶ 8.) In the earlier years, when the loans are alleged, any business that the couple had with the Trust was conducted through Johanna's brother, Robert Keyser, from his law offices in Haddonfield, New Jersey. (Id.)

In the years after Johanna's parents changed their state of residence to Florida, her dealings with her parents continued to take place while they were at their home in New Jersey. (Doc. #10, ¶ 15.) If repayment of personal loans was required, Johanna made payments to her father individually, and not to the Trust, because he had made the loans to her. All payments made by Johanna

were made to her father in New Jersey. (Id., ¶ 25; Doc. #25, ¶ 6.)

Johanna attests that the Trust has been administered in New Jersey since its inception. (Doc. #10, ¶ 16; Doc. #25, ¶ 6.) Accounting services for the Trust have traditionally been provided by Salvatore's long-time accountant in New Jersey. (Doc. #10, ¶ 17.) The Trust's legal matters have been handled by Robert Keyser, co-trustee and New Jersey attorney, or by another New Jersey law firm. (Id., ¶ 18.) Beneficiaries of the Trust have been advised that administrative services have been provided to the Trust by Kathy Pennisi, who resides in New Jersey. (Id., ¶ 20.) The monetary assets of the Trust are managed by Vanguard, which is based in Pennsylvania. (Id., ¶ 22.) Johanna attests that the address for the Trust as reflected in the Vanguard account statements was New Jersey in the years 2001, 2008, and 2018. (Doc. #25, ¶¶ 2-3.)

Johanna attests that her and her husband have not breached an obligation to make any payment on a debt due to be paid within Florida. (Doc. #10, ¶ 7.) She states that it would have been impossible for her to make payment in Florida after receipt of plaintiffs' demand letters in 2015 and 2018, because the Trust does not have a place of business, resident trustee, or other address within Florida. (Id., ¶ 6.) Neither Johanna nor Joseph have conducted business in Florida, have a license to do business

in the state, or have owned any property in Florida. (Id., ¶ 7; Doc. #11, ¶ 6.) They are also not subject to a written obligation to pay a debt within Florida. (Id.) Johanna did have a Florida driver's license but surrendered it when she moved to Texas. (Doc. #25, ¶ 7.)

These Certifications shift the burden back to plaintiffs to produce evidence supporting personal jurisdiction. United Tech. Corp., 556 F.3d at 1276.

**(2) Affidavit of Alfio K. Pennisi (Doc. #17)**

Plaintiffs submit the Affidavit of Alfio K. Pennisi, co-trustee. (Doc. #17.) Alfio's Affidavit avers that the Trust was prepared and executed in Fort Myers, Florida in 1996 when Salvatore and Carole Pennisi were residing there.[5] (Id., ¶¶ 5-8.) The Affidavit states that the Trust has always been administered in Florida. (Id., ¶¶ 15-17, 26.) None of the co-trustees have ever moved the place of administration nor filed or notified any of the beneficiaries of any change in the place of administration. (Id., ¶ 17.) When Salvatore passed away, his estate was probated in Lee County, Florida. (Id., ¶ 20.)

The Affidavit states that the Trust was accepted under the laws of the State of Florida, and shall, in all respects, be

---

[5] Pennisi's Affidavit states that it attaches a true and correct copy of the Salvatore A. Pennisi Trust as Exhibit A (Doc. #17, ¶ 4), however, no attachments to the Affidavit were filed.

governed by the laws of Florida. (Doc. #17, ¶ 19.) Plaintiffs also attach Vanguard statements to the Complaint showing that the Trust's address was in Fort Myers, Florida. (Id., ¶ 22.) The majority of the checks that were written to defendants were written on checks from Vanguard. (Id., ¶ 22.) The Affidavit states that a majority of the payments that were made by defendants (until 2011), were deposited and presented in Fort Myers, Florida. (Id., ¶ 23.) In 2004, Johanna Reed sent a letter verifying part of the debts claimed in this action to Salvatore in Florida. (Id., ¶ 24.) Salvatore and Carole resided in Florida until their deaths. (Id., ¶ 31.)

Although defendants do not dispute that loans were made to them by the Trust, they do dispute that the loans were to be repaid in Florida. Neither party can point the Court to any express agreement as to where the loan payments were to be made, and there is clearly no evidence that there was any agreement that contractual acts were required to be performed in Florida to satisfy the language of Florida's long-arm statute.

There is a "legal presumption that a debt is to be paid at the creditor's place of business." Laser Elec. Contractors, Inc. v. C.E.S. Indus., Inc., 573 So. 2d 1081, 1083 (Fla. 4th DCA 1991) (quotation omitted); see also Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc., 484 F. App'x 322, 327 (11th Cir. 2012) (per curiam) ("Under Florida law, a debtor presumptively has to

pay a creditor at the creditor's place of business, absent a contractual provision stating otherwise."). But although this presumption can alone "satisfy the language of Florida's long-arm provision that refers to contractual acts 'required' to be performed in Florida," Laser, 573 So. 2d at 1083, so too can the presumption be rebutted with evidence showing that payments were in fact required to be sent elsewhere. See Posner, 178 F.3d at 1219; Caritas Healthcare, 484 F. App'x at 327.

Such is the case here. Even if the Court initially presumes that defendants were expected to send payments to Florida, the Certification of Johanna Reed (Docs. #10, 25) sufficiently rebuts this presumption as she attests that all payments on any loans were made to her father in New Jersey and the record actually belies plaintiffs' contentions as to place of payment. The Note attached to the Complaint states that payment is to be made to Mt. Laurel, New Jersey. Though plaintiffs deny defendants' contentions as to place of payment, they have produced no evidence supporting such denial. Accordingly, plaintiffs have failed to carry their "ultimate burden" of establishing that defendants breached an obligation to pay plaintiffs in Florida. Oldfield, 558 F.3d at 1217. Moreover, even assuming that defendants had a contractual duty to tender performance to a Florida resident, that is not in and of itself sufficient to satisfy the statute, Posner,

178 F.3d at 1218, which is all that plaintiffs have alleged in this case.

Plaintiffs argue that because the Trust by its terms is a Florida Trust and is administered in Florida, any loans made by the Trust must be pursued in Florida. This is not so clear. It is disputed whether the Trust was or is now administered in Florida, and the Florida Trust Code states that terms of a trust designating the principal place of administration is only valid if there is sufficient connection with the designated jurisdiction. Terms of a trust designating the principal place of administration are valid and controlling only if a trustee's principal place of business is in or a trustee is a resident of the designated jurisdiction or all or part of the administration occurs in the designated jurisdiction. Fla. Stat. § 736.0108(1). Here, the trustees are residents of New Jersey and based on the materials submitted by the parties, a large part of the Trust's administration has occurred in New Jersey.

Because the Court has determined that it lacks personal jurisdiction over defendants, the Court need not determine whether exercising personal jurisdiction over defendants comports with Due Process or consider defendants' alternative basis for dismissal for improper venue.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #9) is **GRANTED** and the Complaint (Doc. #2) is **DISMISSED without prejudice** for lack of personal jurisdiction.

2. The Clerk is directed to enter judgment accordingly, terminate any pending deadlines, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __3rd__ day of August, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record